OPINION
{¶ 1} This is an appeal from a judgment and decree of divorce. The issues on appeal concern the court's designation and valuation of marital property.
 {¶ 2} Tracy Kelly, the husband, and Kimberly Kelly, the wife, were married in 1991. Tracy[1] operated a photography business, which he had begun several years earlier and which he continues to operate. The parties purchased a marital residence soon after they married, using $22,000 provided by Tracy's father as a down payment.
 {¶ 3} Tracy filed a complaint for divorce in May of 2000. Kimberly filed an answer and counterclaim the following month. They were able through subsequent negotiations to agree on all relevant issues, save two, which the court was required to determine.
 {¶ 4} The parties agreed that Kimberly would be awarded the marital residence, subject to the existing mortgage loan of $55,000 and Tracy's $21,500 equity interest. Kimberly agreed to refinance the mortgage and to pay Tracy the value of his equity interest within two years. Failing that, Tracy could buy Kimberly's interest.
 {¶ 5} There was a question whether the $22,000 that Tracy's father had provided to purchase the house was a loan or a gift. If it was a loan, as Tracy contended, one or both of the parties would have to repay it. If it was a gift to both of them, as Kimberly contended, no repayment was required and the value of the gift would be absorbed within their respective equity interests in the marital residence. The court was therefore required to determine whether the money was a loan or a gift.
 {¶ 6} The other issue the court had to determine was the value of Tracy's photography business. If Tracy kept the business, he would have to pay Kimberly an amount equal to one-half its appreciation in value during the term of their marriage, which is a marital asset.
 {¶ 7} After a hearing, the trial court found that the $22,000 which Tracy's father had provided was a loan and not a gift. Therefore, the court ordered each party to be responsible for one-half its repayment.
 {¶ 8} The trial court found that the value of Tracy's photography business was $1,000 at the time of the marriage and $3,400 at the time of the divorce. The difference, $2,400, is marital property, and the court ordered Tracy to pay Kimberly $1,200 as her equitable share.
 {¶ 9} Kimberly filed a timely notice of appeal. She presents three assignments of error. For convenience, we shall address the last of those first.
 THIRD ASSIGNMENT OF ERROR {¶ 10} "The trial court committed an abuse of discretion when it refused to grant a continuance, and the court's decision to proceed with the trial denied appellant due process of law."
 {¶ 11} The Summary of Docket and Journal Entries shows that on April 24, 2001, the matter was set for trial on October 16, 2001, and that the trial had been set and continued on three prior occasions.
 {¶ 12} An attorney appeared on behalf of Kimberly on October 16, 2001 and requested a continuance. He explained that he'd been assigned the case only the day before by another attorney in the law office, who was counsel of record. He explained that the other attorney was sitting that day as a magistrate in Kettering Municipal Court, and that he needed more time to prepare for trial. (T. 9-10).
 {¶ 13} The trial court denied the requested continuance before it heard counsel's reasons, explaining that "we need to resolve their (sic) case today in the interest of the children, if nothing else. In discussion of the case, the children's issue is first." (T. 2). After hearing counsel the court advised him that when he took the assignment he assumed the responsibilities that go with it, and that "when you get the file and show up in Court, you're there to do business." (T. 11). The court also referred to potential prejudice the adverse party might suffer.
 {¶ 14} Kimberly argues that the trial court's ruling denied her right to due process because, as a result of her attorney's lack of preparation, she was deprived of her right to be heard. She does not identify how she was particularly prejudiced in that regard.
 {¶ 15} Whether to grant or deny a continuance is a question committed to the sound discretion of the trial court. State v. Ungar
(1981), 67 Ohio St.2d 65. The court must balance the needs of its docket against the possible prejudice to the party requesting the continuance if it's denied. Among the factors to be considered in determining whether an abuse of discretion occurred are: the length of the continuance requested, whether there were prior continuances, the potential inconvenience, the reasons for the request and whether the party requesting the continuance contributed to creating them, whether a legitimate reason is given, and any other relevant factor. State v.Grant, 67 Ohio St.3d 465, 1993-Ohio-171.
 {¶ 16} Counsel for Kimberly gave a legitimate reason for requesting a continuance; his need to prepare. However, he proposed no specific additional time he might need, so the court had no basis to evaluate the further delay that would result. The trial had been continued three times before. Counsel of record for Kimberly contributed to the need for a continuance by his failure to appear and by passing the trial assignment to an associate only the day before. And, inconvenience to the court and the adverse party would surely result.
 {¶ 17} We find no abuse of discretion. The foregoing facts support the court's decision to deny the request. The court's expressed concern to resolve issues affecting the children was a serious and compelling reason to proceed that day. The judge was a visiting judge, who would likely find it more difficult to set a new trial date at a convenient time. And, the other side was there and ready to proceed.
 {¶ 18} The third assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR {¶ 19} "The trial court committed an abuse of discretion when it undervalued the present value of husband's business."
 {¶ 20} We take Appellant's argument to be that, because of the alleged abuse of discretion, the trial court's findings of fact concerning the value of the business are against the manifest weight of the evidence determinative of the issues involved.
 {¶ 21} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 22} In applying the abuse of discretion standard, an appellate court will not find that a trial court's finding is against the manifest weight of the evidence when the finding or judgment concerned is supported by some competent, credible evidence going to the essence of the issues involved. C.E. Morris Company v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
 {¶ 23} Tracy opened the business in 1989. The parties were married in 1991. Their marriage terminated at the final hearing in the divorce action in 2001. If the value of the business appreciated during the term of the marriage, the court was required to divide the appreciation in equal shares between Tracy and Kimberly, and if the business was awarded to Tracy to distribute her share of the increase to Kimberly. R.C.3105.171(A)(3)(a)(ii), (B) and (C). The court followed that course, and was therefore required to find the value of the appreciation.
 {¶ 24} The only evidence the parties offered relevant to the value of the business or the appreciation in its value was the testimony of Tracy, Kimberly, and her father, Alan Carrington. It was all opinion evidence.
 {¶ 25} Lay opinion evidence is admissible when the opinions or inferences involved "are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. Evidence is admissible for those purposes if the witness has personal knowledge of the matter concerned. Evid.R. 602. An owner of property may state an opinion concerning its value because he is presumed to be familiar with the property's value from having purchased or dealt with it. Tokles Son, Inc. v. Midwestern Indem. Co. (1992), 65 Ohio St.3d 621.
 {¶ 26} The photography business is Tracy's sole occupation. He testified that he works in the business from 10:00 a.m. to 6:00 p.m., Tuesday through Friday, and on weekends. (T. 41).
 {¶ 27} Tracy testified that he does not know what income the photography business produces. (T. 23). Tracy said that his accountant who kept the books would know, and that he only "vaguely recalls" that one year the profit was between $20,000 and $23,000. (T. 26).
 {¶ 28} Tracy testified that he'd taken no salary from the business, though he does pay the family bills out of his business account. (T. 29). Kimberly confirmed that he did, (T. 63), except those that she pays from her babysitting fees of approximately $7,000 per year. (T. 62). She estimated that Tracy's share of the expenses, paid wholly from his income, to be approximately $30,000 per year. (T. 78).
 {¶ 29} Tracy started his photography business in 1989, with help from his parents. (T. 19). When he and Kimberly were married in 1991 the business was housed in a space of approximately 1900 square feet. (T. 34). Some years later, due to increased business, it was moved to its current location, which has approximately 4800 square feet. (T. 34). The former location had two rooms, while the new location has eight. (T. 66).
 {¶ 30} Tracy's parents help out in the business by performing unpaid labor. (T. 27). Tracy has one other "casual" employee, who is paid $250 per week. (T. 28).
 {¶ 31} Tracy's business includes walk-in clients whose photographs he takes at the business location. He shreds his copies of the receipts for the fees he receives. (T. 40). The business also includes or has included high school photo contracts. Tracy said that he doesn't know what those are worth. (T. 38). Kimberly testified that Tracy's high school photo contracts, of which he's had several, had in the past yielded as much as $6,000 in cash for an evening's work at a prom. (T. 84). She opined that the volume of business had increased by five times since it opened. (T. 88).
 {¶ 32} Tracy's business has physical assets that include cameras and related equipment, developing equipment, a computer or computers, "backgrounds" and props, furniture, telephones, a closed-circuit television system, other office equipment, and a tanning bed for his personal use. When the business opened in 1989, it had several cameras, backgrounds, and some equipment. (T. 23).
 {¶ 33} Tracy consistently disclaimed having any opinion what his business assets were worth in 1989 or at the time of the divorce. He insisted that he could only speculate. (T. 18, 21). He speculated that the assets were worth about $8,000 when he and Kimberly were married. (T. 18). The gist of his testimony was that the same kind of equipment, though he owns much more of it, is now worth far less, article by article. (T. 18-26). Even then, he could state no firm conclusions about the worth of those assets.
 {¶ 34} Kimberly was unable to put a value on the value of the business assets. (T. 64). She testified that Tracy now had far more of them than when they were married. (T. 64-75). Her father, Alan Carrigan, opined that the assets of Tracy's business are worth $50,000, but said that was a "guess." (T. 96-99).
 {¶ 35} Based on the evidence it heard, the trial court found that Tracy's business was worth $1,000 when the parties were married and $3,400 when the marriage terminated. The difference, its appreciation, the trial court found to be a marital asset worth $2,400, and it ordered Tracy to pay Kimberly $1,200 as her share.
 {¶ 36} The trial court was confronted with a problem that not infrequently occurs. The court is charged by R.C. 3105.171 to identify the marital assets and divide them equally. Yet, it can't accomplish that absent evidence probative of the value of those assets, at least when the court divides them physically or by ordering one spouse to pay another her share of their value. The only alternative is to order the assets sold and the net proceeds equally divided. However, that's impractical when one of the spouses needs to retain the assets for some legitimate purpose.
 {¶ 37} The court presumably concluded that Tracy needed to retain the assets of his photography business in order to generate an income that his child support and spousal support obligations, which total approximately $730 per month, required him to pay. The parties appear to have taken that same approach. Each was competent to give opinions concerning the value of the business, but neither did. Kimberly was unaware of its value. Tracy consistently avoided giving any opinion, even though his experience in running the business put him in a position to know what the business and its assets are worth. Tracy's testimony concerning the value of his business was so evasive as to be less than credible.
 {¶ 38} Confronted with these obstacles, the court nevertheless arrived at a value for the business, and Kimberly's share, which on this record is arbitrary. The court abused its discretion in so doing. The assignment of error is sustained.
 {¶ 39} On this record, the court could perform its statutory charge to divide marital assets equally only by appointing a qualified, independent appraiser to provide the court a report on which it could rely. The appraiser's fee may be taxed as costs to the parties. Therefore, we remand the case to the trial court for further proceedings for that purpose, and to divide the assets of the photography business that are marital assets in a manner consistent with R.C. 3105.171. Should the parties instead agree on the value that Tracy will pay Kimberly for her share of the business, the court may enter a judgment on their agreement.
 SECOND ASSIGNMENT OF ERROR {¶ 40} "The trial court committed an abuse of discretion when it determined that the $22,000 house down payment was a loan and not a gift."
 {¶ 41} Tracy testified that the $22,000 which his father had given the parties to purchase the marital residence was a loan, not a gift. (T. 15). His father likewise testified that it was a loan. (T. 50-51). However, no payments on the loan had been made since it was extended. (T. 51). Further, no note or mortgage deed secured the obligation. Instead, according to both Tracy (T. 15) and his father (T. 50), the parents' names were on the warranty deed for the property as grantees, along with Tracy's and Kimberly's, to secure the parents' interest.
 {¶ 42} Neither the deed nor a copy of it was offered to show that the parents were also grantees. Kimberly objected to Tracy's testimony on that point, but the trial court overruled the objection. (T. 15). The court erred, because either the original or a copy of the deed was required to prove its contents. See Evid.R. 1001, et seq. However, when Tracy's father gave the same testimony, there was no objection. (T. 50). Any error in admitting that evidence is therefore waived, and the court could rely on it. Indeed, Kimberly doesn't dispute that Tracy's parents are also grantees on the deed.
 {¶ 43} Kimberly testified that she was never told that the money was provided as a loan from Tracy's parents. (T. 80). She testified that Tracy told her it was a gift. (T. 86). She confirmed that no efforts to repay the amount had been made during the parties' twelve-year marriage. (T. 82).
 {¶ 44} The trial court found that the money provided by Tracy's father was a loan and not a gift. The court made the parties each responsible to repay one-half the amount owed, but it didn't specify how they would do that. Because the loan was not secured by a mortgage on the property, if and when the existing mortgage obligation is refinanced the parents have no right as mortgagees to repayment out of the loan proceeds. However, if the parents' names are on the deed as grantees they can effectively insist on repayment as a condition of their cooperation in refinancing the other debt which the property secures.
 {¶ 45} The trial court's finding that the $22,000 was a loan and not a gift is supported by some competent, credible evidence. Therefore, no abuse of discretion is demonstrated, and we may not reverse. Morrisv. Foley.
 {¶ 46} The assignment of error is overruled.
 Conclusion {¶ 47} Having sustained the first assignment of error, we will reverse the judgment from which this appeal was taken, in part, and remand for further proceedings consistent with this opinion.
BROGAN, J. and YOUNG, J., concur.
[1] For convenience and clarity, the parties are identified by their first names.